STATE OF CONNECTICUT *v.* DRAMESE K. FAIR
(AC 29074)

Beach, Robinson and Schaller, Js.

Argued September 11—officially released December 8, 2009

*Darcy McGraw,* special public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Marc G. Ramia,* assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Dramese K. Fair, appeals from the judgment of conviction, rendered after a jury trial, of possession of a hallucinogenic substance other than marijuana in violation of General Statutes § 21a-279 (b) and possession of a hallucinogenic substance other than marijuana within 1500 feet of a school in violation of General Statutes § 21a-279 (d). On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction and (2) the court improperly instructed the jury as to constructive possession. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 24, 2006, at approximately 8 p.m., the defendant approached a former girlfriend, Kathy

Wright, while she was in her vehicle in a Getty Mart gasoline station parking lot located on Kimberly Avenue, New Haven. He requested that Wright give him a ride to Greenwich Avenue. Wright asked the defendant, "[a]re you dirty?" The meaning of the inquiry was to ask whether he was carrying drugs, guns or other contraband. Wright explained that she was concerned because her car was not registered and was bearing a license plate that did not belong to it. The defendant answered that he "wouldn't get in [her] car like that," and Wright permitted him to get into the front passenger seat of her vehicle. Wright then proceeded to exit the parking lot toward Greenwich Avenue, without activating her headlights.

On Greenwich Avenue, a police vehicle pulled up behind Wright's vehicle and signaled her to pull over. As Wright began to pull over, the defendant became very agitated. Wright and the defendant began arguing, and Wright yelled, "[w]hat's wrong with you?" The defendant responded that he was "dirty." Wright advised the defendant, "[l]isten, you better run out of my car, you better do something." Orlando Crespo, a New Haven police officer, approached the driver's side door, and both Wright and the defendant swung their car doors open. Crespo ordered both Wright and the defendant to remain in the vehicle. On learning from Wright that her vehicle was not registered and had an illegal license plate attached, Crespo requested Wright to exit the vehicle and submit to a patdown by a female officer. The female officer did not find any drugs or weapons on Wright and escorted Wright to the backseat of a police car.

As Crespo approached Wright, Gary Hammill, a New Haven police officer, watched the defendant in the passenger seat. After Wright was escorted away from the vehicle, Crespo moved toward the defendant's side of

the vehicle. Both Crespo and Hammill noticed aluminum packets on the ground outside the passenger side door. The officers also noticed additional aluminum packets in the area between the front passenger seat and the passenger door. In total, twenty-six aluminum packets were found inside and outside the car. A field test was performed on the contents of one of the packets. The field test indicated that the aluminum packets contained phencyclidine, otherwise known as PCP. A state toxicologist later confirmed that the packets contained PCP.

The defendant was placed in handcuffs. A search uncovered no additional aluminum packets on his person, but it did uncover three cellular telephones and $785 in paper currency, mostly in small denominations. Crespo later testified that the items recovered from the defendant were consistent with those recovered from persons involved in the sale of narcotics.

Wright testified that at the time of the traffic stop, the car was occupied by only her and the defendant. She stated that she had purchased the car eight days earlier and had performed a thorough search of the vehicle at that time. Wright further testified that the defendant had been her only passenger in the vehicle since she had purchased it.

The defendant was charged by way of an amended long form information with possession of a quantity of a hallucinogenic substance other than marijuana, phencyclidine, in violation of § 21a-279 (b) and possession of a quantity of a hallucinogenic substance other than marijuana within 1500 feet of a school in violation of § 21a-279 (d). The jury found the defendant guilty of both charges. The defendant was sentenced to a term of four years and one day incarceration and three years special parole. This appeal followed.

I

The defendant first claims that the state failed to present sufficient evidence to support his conviction of possession of a hallucinogenic substance other than marijuana[1] and possession of a hallucinogenic substance other than marijuana within 1500 feet of a school.[2] With respect to both crimes, the defendant claims that the evidence introduced at trial was insufficient to prove that he had actual or constructive possession of the PCP found by the police. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence

---

[1] General Statutes § 21a-279 (b) provides: "Any person who possesses or has under his control any quantity of a hallucinogenic substance other than marijuana or four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for a subsequent offense may be imprisoned not more than ten years or be fined not more than five thousand dollars or be both fined and imprisoned."

[2] General Statutes § 21a-279 (d) provides in relevant part: "Any person who violates subsection . . . (b) . . . of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school . . . shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection . . . (b) . . . of this section."

that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *Coleman*, 114 Conn. App. 722, 727, 971 A.2d 46, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009).

The defendant asserts that no reasonable jury could have found that he was in possession of the PCP found in the vehicle. "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession . . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149–50, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101, after remand, 110 Conn. App. 171, 954

A.2d 256, cert. granted on other grounds, 289 Conn. 944, 959 A.2d 1010 (2008).

Although the defendant did not physically possess the PCP when he was arrested, there was incriminating testimony to support an inference that he constructively possessed the narcotics. Wright, the driver of the vehicle, testified that the defendant said to her that he was "dirty," which meant that he was carrying drugs or weapons, when she was stopped by the police. She also testified that she had inspected the vehicle prior to purchasing it and that the defendant had been the only passenger in her vehicle between the time when she bought the vehicle and the time she was pulled over by the police.

The defendant also argues that the testimony of Wright was not credible because she was engaged in illegal behavior that led to the police stopping her vehicle. He also argues that the location of the aluminum packets made it just as likely that the drugs belonged to Wright as that they belonged to the defendant. "Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *McFarlane*, 88 Conn. App. 161, 169, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005).

The tangible evidence found at the scene also supports an inference that the defendant exercised dominion and control over the packets of narcotics. There were aluminum packets lying on the ground in plain view just outside the passenger side door of the vehicle. Additional packets were found around the area the defendant was sitting. A search of the defendant's person uncovered three cellular telephones and $785 in

cash. On the basis of the cumulative effect of that evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant was in constructive possession of the narcotics.

II

The defendant next claims that the court's constructive possession instruction to the jury was inadequate. We disagree.

"Our standard of review regarding properly preserved claims of improper jury instructions is well settled.[3] In reviewing claims of instructional [impropriety], we seek to determine whether it was . . . reasonably possible that the jury was misled by the trial court's instructions. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law . . . we will not view the instructions as improper. . . . Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is

---

[3] We note initially that the defendant's challenge to the court's instruction is properly reviewable. "A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given." *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002). Here, the defendant submitted his requested instruction in written form two days prior to the jury charge conference.

given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Citations omitted; internal quotation marks omitted.) *State v. McCarthy*, 105 Conn. App. 596, 617–18, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008).

In his request to charge, the defendant asked that the jury be instructed as follows: "It [cannot] be logically and reasonably presumed that an occupant of a motor vehicle knew of the presence of [contraband] in a vehicle simply on the fact that he was an occupant. Presence alone unilluminated by other facts is insufficient proof of possession."

The court's instruction conveyed the same concepts as the charge requested by the defendant. The court first stated that the state had the burden to prove all of the elements of each crime. It then explained the elements of possession and defined both actual and constructive possession. In the explanation of constructive possession, the court informed the jury that the defendant's mere presence at the scene was not sufficient to find him guilty of possession.[4]

---

[4] The court instructed the jury in relevant part: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. First, that the defendant knowingly possesses; second, any quantity of a hallucinogenic substance other than marijuana, and in this case the state has alleged the substance to be phencyclidine, commonly referred to as PCP.

"The term 'knowingly' means having an awareness of the nature of one's own conduct or the awareness of the existence of specified facts or circumstances. Here, it would mean that the state must prove beyond a reasonable doubt that the defendant was aware that he possessed phencyclidine. Possession may be actual or constructive. In a moment, I will define both of these for you.

"Possession, actual or constructive, may be proven by either direct or circumstantial evidence. Keep in mind that possession of the alleged phencyclidine, not ownership, is all that is required. Actual possession is established if it is shown that the defendant had actual physical possession of the alleged phencyclidine. Constructive possession is established if it is shown that the defendant exercised dominion and control over the alleged phencyclidine and had actual knowledge of its presence.

The defendant claims that the court improperly failed to instruct the jury as requested by counsel. He argues that the charge as given by the court did not highlight that his presence in the vehicle alone was not sufficient evidence of possession and "implied that other evidence in the case did supply the necessary proof of constructive possession." In addition, he contends that the charge as given "effectively imposed a burden on the defendant to supply an innocent explanation for his presence." We disagree.

After a thorough review of the charge, we conclude that it is not reasonably possible that the jury was misled by the court's charge because the charge as given included the gravamen of the requested charge. The requested instruction asked the court to charge that (1) knowledge of the presence of drugs cannot be inferred only from presence in the vehicle and that (2) presence in the vehicle, without other facts is insufficient proof of guilt. The court instructed the jury that (1) actual knowledge of the presence of drugs was a required element and (2) mere presence was not enough. The reasonable interpretation of that instruction is that if mere presence is not enough to find the defendant guilty, then other evidence necessarily would be required. Because the instruction that the court gave was essentially the same as the instruction requested by the defendant, we conclude that the court did not improperly instruct the jury on constructive possession.

The judgment is affirmed.

In this opinion the other judges concurred.

---

"Remember, then, constructive possession requires a showing of two things: control and knowledge. Constructive possession may be exclusive or shared by others; the latter is known as joint possession. Mere presence at the scene of the crime or in the vicinity of criminal activity is insufficient proof by itself that the defendant committed the offense.

"Control is to be given its ordinary meaning, that is, to say that the defendant is in control of the alleged phencyclidine if it is shown that he exercises a direct control over it."