******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM CONNELLY *v.* COMMISSIONER
OF CORRECTION ET AL.
(AC 35361)

Gruendel, Alvord and Bear, Js.

*Argued February 21—officially released April 29, 2014*

(Appeal from Superior Court, judicial district of New
Britain, Cohn, J.)

*William Connelly*, self-represented, the appellant
(plaintiff).

*James W. Caley*, assistant attorney general, with

whom, on the brief, were *George Jepsen*, attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellees (named defendant et al.).

*Gregory F. Daniels*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (defendant Freedom of Information Commission).

*Opinion*

GRUENDEL, J. The self-represented plaintiff, William Connelly, appeals from the judgment of the Superior Court dismissing his appeal from the decision of the defendant Freedom of Information Commission (commission)[1] due to the plaintiff's failure to comply with the service of process requirements of General Statutes § 4-183 (c). Although the plaintiff raises multiple claims on appeal, the dispositive one is whether the court correctly concluded that it lacked subject matter jurisdiction over the appeal. We affirm the judgment of the Superior Court.

At all relevant times, the plaintiff was incarcerated at the Osborn Correctional Institution (Osborn) in Somers. In a letter dated March 23, 2011, the plaintiff filed a request with the defendant Commissioner of Correction (commissioner) and the defendant Department of Correction (department) to obtain copies of all "psychiatric/psychological diagnoses and evaluations [and] military records" in his file at Osborn. On April 25, 2011, the plaintiff filed a complaint with the commission, alleging that the commissioner and the department violated the Freedom of Information Act, General Statutes § 1-200 et seq., in denying that request. Following a hearing, the commission issued a final decision in which it found that none of the requested records were in the plaintiff's file at Osborn.[2] Accordingly, the commission dismissed the plaintiff's complaint. The commission mailed notice of its decision to the plaintiff on February 14, 2012.

On March 26, 2012, the plaintiff timely filed an administrative appeal of that decision in the Superior Court, along with an application for a waiver of fees. That same day, the court accepted the notice of appeal and granted the fee waiver request.[3] On April 24, 2012, the plaintiff filed a motion for articulation, stating in relevant part: "[The court] signed the [waiver] form, but did not indicate whether the order included entry fee, filing fee, service of process fee and transcript fee, as requested by the plaintiff. The transcripts [requested] are vital to the plaintiff's claim. The plaintiff must quote extensively from those transcripts in support of his claim. Therefore, the plaintiff moves the court for articulation of the 26 March 2012 order." The very next day, the court articulated its order as follows: "The court articulates its waiver of fees to only include the waiver of the $300 filing fee and the posting of the $250 recognizance bond. This court has no power to grant waivers of fees for transcripts of agency proceedings; the plaintiff should receive copies of those transcripts once the agency files the administrative record. Additionally, the court did not waive the marshal fee because of the ability to serve an administrative appeal by certified mail."

The commission was served, by regular mail, with a handwritten copy of the plaintiff's appeal on April 4, 2012—fifty days after the commission mailed notice of the underlying decision.[4] The commission thereafter filed a motion to dismiss the appeal, alleging that the plaintiff had failed to comply with the requirements of § 4-183 (c). The commissioner and the department filed a similar motion on July 9, 2012. The plaintiff filed oppositions to those respective motions. The court heard argument from the parties on September 12, 2012, at which the court requested supplemental briefing on the availability of certified mail service for incarcerated individuals and whether, as a matter of law, a letter or parcel is deemed to be mailed at the time an inmate hands the article to staff for deposit into the mail.

In its December 28, 2012 memorandum of decision, the court found that the plaintiff had failed to comply with the service of process requirements of § 4-183 (c). Specifically, the court found that the plaintiff's service of process on the commission was untimely. In so doing, the court rejected the plaintiff's exhortation to adopt the so-called "prison mailbox rule" and instead reasoned that "the failure of the plaintiff to prove that he actually deposited the appeal in the mail [within the forty-five day time period required by statute] is grounds to find a lack of compliance with § 4-183 (c)." Concluding that it lacked subject matter jurisdiction, the court dismissed the plaintiff's appeal, and this appeal followed.

At the outset, we note that "[a]ppeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by *strict compliance* with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal. . . . The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it." (Emphasis added; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 55 Conn. App. 679, 683, 739 A.2d 744 (1999), aff'd, 259 Conn. 131, 788 A.2d 1158 (2002). "A determination regarding [the Superior Court's] subject matter jurisdiction is a question of law. When . . . the [Superior Court] draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Miller's Pond Co., LLC* v. *Rocque*, 71 Conn. App. 395, 401, 802 A.2d 184 (2002), aff'd, 263 Conn. 692, 822 A.2d 238 (2003).

Section 4-183 (c) provides in relevant part that "[w]ithin forty-five days after mailing of the final decision . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that

rendered the final decision . . . . If service of the appeal is made by mail, service shall be effective upon deposit of the appeal in the mail." On our plenary review, we conclude that the plaintiff failed to comply with that statutory requirement.

Our Supreme Court has held that "§ 4-183 (c) requires both the filing and the service of the appeal within the forty-five day period"; *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 853, 633 A.2d 305 (1993); and that "a failure to meet [that] time limitation remains a subject matter jurisdictional defect." Id., 854; accord *Bittle* v. *Commissioner of Social Services*, 249 Conn. 503, 520, 734 A.2d 551 (1999) ("failing to make proper service on the agency in accordance with the relevant statutory provisions [of § 4-183 (c)] is a jurisdictional defect subjecting the appeal to dismissal"). It is undisputed that the commission mailed notice of its decision to the plaintiff on February 14, 2012, and that the commission received service of the plaintiff's appeal on April 4, 2012. As the court specifically found in its memorandum of decision, "the plaintiff has no proof that the complaint was deposited in the mail" within the forty-five day period.[5] That finding is substantiated by the record before us. The precedent of this state's highest court instructs that "[i]f there is no service at all on the agency within the forty-five day period, the court lacks subject matter jurisdiction over the appeal . . . ." (Internal quotation marks omitted.) *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, supra, 856. Because the record before us is bereft of any evidence indicating that the plaintiff complied with that statutory requirement, the court properly dismissed the administrative appeal. See *Godaire* v. *Freedom of Information Commission*, 141 Conn. App. 716, 719, 62 A.3d 598 (2013).

The plaintiff nevertheless claims that the court misapplied that statutory requirement for a variety of reasons, only two of which merit any discussion. First, the plaintiff argues that the forty-five day time period in the present case commenced not on February 14, 2012— the date that the commission mailed notice of its final decision—but rather on February 22, 2012, the date that prison officials allegedly delivered the notice to the incarcerated plaintiff. That claim is belied by the plain language of § 4-183 (c), which provides that the forty-five day period commences upon the "mailing" of an agency's final decision.[6] Although the plaintiff argues that an alleged delay by prison officials in delivering that notice to him rendered the date of mailing "meaningless," it remains that the forty-five day time period set forth in § 4-183 (c) is triggered by the mailing of notice, not receipt thereof. See *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 506 ("service of process of appeal papers pursuant to § 4-183 [c] [1] is perfected when the appeal papers are deposited in the

mail within the time limits set").

The plaintiff also claims that the court erred in declining to apply the federal prison mailbox rule. See *Houston* v. *Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (notice of appeal deemed filed when prisoner delivers it to prison authorities for forwarding to court). In *Hastings* v. *Commissioner of Correction*, 82 Conn. App. 600, 604, 847 A.2d 1009 (2004), appeal dismissed, 274 Conn. 555, 876 A.2d 1196 (2005), this court expressly declined to adopt such a rule. We are bound by that precedent, as it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding. See, e.g., *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 759, 966 A.2d 239 (2009) ("this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel" [internal quotation marks omitted]).

The plaintiff attempts to circumvent *Hastings* by grounding his claim in the protections afforded by article first, § 10, of our state constitution.[7] We decline to entertain the merits of that unpreserved claim. A review of the record demonstrates that the plaintiff did not raise that distinct claim in any manner before the Superior Court. "It is fundamental that claims of error must be distinctly raised and decided in the trial court. As a result, Connecticut appellate courts will not address issues not decided by the trial court. . . . Practice Book § 60-5 provides in relevant part that our appellate courts shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . [T]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Thus, the requirement of Practice Book § 60-5 that the claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Faison*, 112 Conn. App. 373, 379–80, 962 A.2d 860, cert. denied, 291 Conn. 903, 967 A.2d 507 (2009). Moreover, the plaintiff has not sought review of that unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. We thus decline to review that claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Also named as defendants in the plaintiff's complaint are the Commissioner of Correction and the Department of Correction. They also are parties to this appeal.

[2] Specifically, the commission found that "none of the requested records are contained in the [plaintiff's] master file at [Osborn]. It is further found that records of 'psychiatric/psychological diagnoses and evaluations' would

be contained in the [plaintiff's] medical file, which is in the custody of the University of Connecticut [Health Center] Correctional Managed Health Care. However, the [plaintiff] is specifically interested in determining whether such records are also contained in his file at Osborn, which they are not."

[3] In granting that request, the court found that, as a result of the plaintiff's indigence, waiver of both the entry fee for the regular docket and the filing fee was warranted.

[4] It is undisputed that the commission was not served by "United States mail, certified or registered, postage prepaid, return receipt requested," as required by § 4-183 (c). The defendants maintain, as an alternate ground of affirmance, that such noncompliance provides an additional basis on which to conclude that the court lacked jurisdiction over the plaintiff's administrative appeal. We need not address that alternate argument in light of our conclusion that the appeal was not served on the commission in a timely fashion.

[5] "Our Supreme Court has held that the party bringing the action bears the burden of proving that the court has subject matter jurisdiction." *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 193, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008).

[6] The record before us contains copies of both the commission's February 14, 2012 notice to the plaintiff of its final decision and a certified mail receipt from the United States Postal Service indicating that the notice was delivered at 9 a.m. the following day.

[7] Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

———————————————